Good morning and welcome. My name is Bridget Beattie. I'm a circuit judge with my chambers in Phoenix, Arizona. I'm sitting today with Senior Circuit Judge Richard Pius, whose chambers are in Pasadena, California. Judge Pius and I are both very grateful and happy to be sitting today with Judge Renner Collins from the District of Arizona. We have submitted a few cases this morning, but the first case for argument is a consolidated case, Singh v. Garland. And it looks like our counsel on both sides are appearing by video. Good morning, counsel. Can you hear us? Yes, Your Honor. Are you able to hear me? I can hear you, Mr. Behram. She's on mute right now, so there we go. Good morning. I'm here also. Okay. Good morning. Thank you. So, Ms. Behram, would you like to proceed? And did you wish to reserve any time for rebuttal? I believe I'm first up, Your Honor. Oh, I'm sorry. Oh, I'm reading that you're on mute. Thank you, Your Honor. Good morning. May it please the court. I'm Robert Jobe, and I'm appearing today on behalf of the petitioner, Ranjit Singh. Your Honor, the evidence presented by the government, this is a UK report, indicates that there are basically three types of Sikh asylum claims. Those that are based on religion, those based on membership in certain groups, such as Kali Dal, Sheremonia Kali Dal, or the All India Sikh Students Federation. And then finally, the category in which we feel this case most closely fits are those where the individual has or is perceived to have harbored or assisted terrorists. And that report goes on to say that these claims otherwise might cite association with Sikh Khalistan separatist groups, including proscribed groups. That's our case. Now, because the presumption is tethered to the basis of the original claim, the government's burden is inextricably linked to the specific reasons that the applicants suffered past persecution. And in this case, the immigration judge and Mr. Singh and his counsel agreed that this case falls into that third category. With regard to the first arrest, for example, and this is on page 83 of the record, the immigration judge said, Singh, quote, was not harmed on this occasion for being a Sikh. The police were Sikhs. He was detained on account of the fact that he admittedly provided food and shelter to militants. She went on to say on page 84, the arrests that followed thereafter from this initial arrest flowed from this initial arrest where he did give food and shelter to the militants. Again, that's on page 84. Mr. Singh agreed in his testimony with regard to the first arrest. He said they arrested me because the militants, a group with Ajay Singh and his associates, they had at gunpoint taken shelter into my home. And they went on to say that the police were saying you gave shelter to the militants. You gave them food in your home. That's on page 121 of the record. With regard to the second arrest, the judge noted that Mr. Singh had been accused of associating with Babur Khalsa, a known terrorist organization. And on page 83 of her decision, page 83 of the record in her decision, she said once again, he was not arrested because he was a Sikh. He was arrested because the police questioned him regarding the possibility that he might be a they arrested me in relation with that crime. This was the assassination of the former of the chief minister of Punjab at the time. And they accused me of relations with Babur Khalsa. So Mr. if I may interrupt you for a moment. Yes. I assume that what you're arguing is why the change circumstances analysis would not be relevant. Is that the point of this discussion? Yes. Yes. So I understood your clients proposed social group to be based on religious persecution and members of the Sikh party, at least before the agency, but it seemed that on appeal, it was rephrased as members of the Sikh party who have been previously arrested and are accused of are considered to be militants or terrorists. Is the is the group the same? Was it the same before the BIA and before this court? And if so, can you give me some record sites? That's right. This is not a particular social group case. This is an imputed political opinion case. And Mr. Singh has been consistent throughout. In fact, in his closing argument before the immigration judge, he's he argued that Singh's fear is based on the Indian government's that he is, quote, affiliated with terrorists because of his demands for an independent Sikh state. That's on page 162 of the record. OK, Mr. Joe, let me let me see if I just understand what the argument here is really all about. And that is that the IJ first determined that he that Mr. Sikh was had not suffered persecution. Correct? The IJ included that in her decision. That's not something the BIA adopted. Right. So then once you assume that there was past persecution, then you the government can rebut that by showing change conditions in the country that would alleviate any fear of persecution should he return. Right. Absolutely. OK, so the problem, as I understand it, that you're arguing is that under our case law, the IJ needs the agency needs to make an individualized determination based upon the exact chances of the individual as it was when he was there. They have to make an individualized showing that refutes the presumption that arises and the presumption arises on the basis of the original claim. The scope of the presumption is defined by the basis of the original claim. And what I'm saying here, if I could, your honor, there are three different categories of cases, religion, membership and a colleague. I got that. We're concerned with the third the third basis, which is that he was a Sikh involved with with a callous stand and then other organizations with militants. He was accused of being affiliated or aiding rather militant groups. That right. Correct. And specifically accused of supporting Barbara Khalsa. Correct. So where but that understanding. So where does the IJ go wrong? Well, the IJ, your honor, goes wrong. The BIA says there was an individualized determination. Right. But the individualized determination didn't take into account in any way the theory of the case, that is, that he was targeted specifically because of his association with an alleged terrorist organization. If you look at those three groups, the three types of cases that the government lays out in its in the evidence that it submitted, the IJ focused on evidence that would rebut persecution based on religion, evidence that would rebut persecution based on membership and ceremony, a colleague. But it didn't present it. It didn't even analyze whether there was evidence with regard to whether that's the presumption with regard to that third type of case might be rebutted. It didn't even it didn't talk about Barbara Khalsa. It didn't talk about the fact that he was arrested after he admitted to sheltering militants. It didn't talk about that after the assassination of the chief minister, he was arrested from home. This isn't like Jagtar Singh, who was arrested at some checkpoint because it was a seat. The IJ does talk about relocation when he talks about his situation, when he focuses on or when she focuses on relocation within the country and on future future fear. Now, if you listen there. Well, I'm not sure if you could point me if you could point me to what you're talking about. The section of the decision dealing with the rebuttal of the presumption, it specifically deals only with persecution on account of being a Sikh or a member of a colleague. It doesn't deal with the specific circumstances of this case. Three or four of the incidents that this man described, they all relate to his alleged association or suspected association with a terrorist organization. You're not going to find anything in either the IJ analysis or the boards dealing with that fact. But that's the critical point. Of course, it might be true that Sikhs aren't persecuted for being Sikhs. And it might also be true that members of Sheremoniya Khalid are no longer at risk. But that's not this case. That was Jagtar Singh. This case concerns somebody who is specifically accused of associating with Babur Khalsa, a well-known terrorist organization. This individual presented evidence that in 2005, at least 70 people suspected of associating with Babur Khalsa were arrested. It did a case analysis of 28 specific cases. This is the NSAF report. And in the NSAF report, which begins somewhere around page 593, it specifically talks about 28 individual cases between June and August of 2005, where suspected members or associates of Babur Khalsa were arrested, illegally detained and tortured. The judge has to grapple with that. You can't say that there's an individual that she conducted an individualized analysis if she doesn't grapple with that. The most critical evidence in the record. She said nothing. She confined her analysis just like Jagtar Singh types one and two. This is type three. So, Mr. Jobe, you're out of time. Did you wish to retain any time for rebuttal? If I could, please, Your Honor, I would much appreciate that. All right. We'll give you a minute. Thank you. Ms. Bayram. May it please the court. I am Sarah Bayram appearing on behalf of the United States Attorney General. This court should deny this consolidated petition for review. Here, the agency did examine the record evidence and conducted an individualized analysis in ruling that the Department of Homeland Security had rebutted the presumption. And that ruling is supported by substantial evidence. Now, in making determination, the agency looked to the claim that petitioner, Mr. Singh presented. And in his claim, he said that he was a Sikh. And he called himself a regular member of the Akhtar-e-Man party. And he had these detentions and these arrests. Yes, he was accused of being associated with Sikh militants. And that was part of his claim. In addition, the agency also considered that his last harm, his last detention was in 1997. In analyzing his claim, the agency also considered that he had a threat in 1998 that never materialized, that he continued to live in India unharmed until he left in 2000. And that at the end of the day, these were incidents that happened 15 years ago. And that was in 2012, before the immigration judge, the immigration judge and the board and agency together, they looked at that. And that was the backdrop of his claim in which they consider the evidence. And the evidence that DHS brought, made clear that regular members of the party, as Mr. Singh described himself to be, were that country conditions had changed dramatically, that there wasn't this indication that they were singled out for abuse anymore, that internal relocation was feasible. Of course, we know that from Mr. Singh's own experiences. And that for his particular circumstances, the evidence indicated that he was unlikely to have a well-founded fear of future persecution, that in the future, um, if he returned India, at the time of the agency's decision, that would have been 15 years already after those last incidents, that he simply didn't have that. And here, the court need not just take my word for these things, it can look to as we mentioned in our brief, the Jagtar Singh case. In addition, Singh v. Barr, which is an unpublished case that came out in 2020, where in both of those cases, the panels found that on very similar facts, and on evidence that we have here, the UK note and the State Department report, that the presumption was rebutted. Now, you know, petitioner claims that Jagtar Singh isn't similar. It's not instructive. And certainly, he can hold to that view, but it is very instructive. Because the facts are nearly identical. As in here, with the three detentions, with the party, Jagtar Singh was also accused of meeting with terrorists, aiding militants, and terrorists, just like our petitioner is here. In the 2020 unpublished case, Singh v. Barr, again, there too, the petitioner was also accused of aiding militants, aiding terrorists. It is the same, almost the same identical claim in terms of the detentions, in terms of the harm that was suffered. We have beaten with leather belts, wooden sticks, meeting with terrorists, accused of meeting with terrorists, you know, released on bribes with help from his family in the village. So Jagtar Singh, the facts of Jagtar Singh are very similar. They do share that same link of aiding militants, aiding terrorists. And in that case, on the evidence, the evidence we have here, the panel found that the department had rebutted. All right. So Ms. Braveman, let me ask you a few questions. May I? Yes, of course. Okay. So where in the IJ's decision does the IJ grapple with the argument that Mr. Jobe was just making? That is, that not only, it's just not that he was a Sikh, because I think if his only claim was, I'm a Sikh, and Sikhs are suffering persecution in India, that argument fails. I agree with you. He wouldn't get past first base, because conditions have changed in general for Sikhs. But that's not Mr. Jobe's argument. Well, the immigration judge... I mean, when the immigration judge talks about that, the immigration judge, she says, see exhibit three, I think it was, or four, just see some exhibit, and that's it. Well, that is the exhibit. That is the exhibit that contains the department's rebuttal evidence. And certainly, she could have pin-sighted a page. But she does, in the discussion, which is contained throughout pages 13 to 16, which the board highlights, you know, she does talk about that, you know, his persecution claims. She also, again, talks about his current circumstances that are closer in time to when he left, which did not involve harm. And she looks at that totality of the circumstances of his claim. And those are the pages I was referring to when I was asking questions of Mr. Jobe. But in those pages, she's talking about relocation within India, and the general fear of future persecution. Where does she deal with his basic claim? That's what I had a problem with. See, she does address, or she talks about- Is it appropriate to just say, oh, that's, she really meant to use all of that as part of her analysis of why the government has rebutted his past persecution, which she then, you know, which she assumed. I think that the immigration judge certainly could have, you know, been a little bit more specific, but she does in the analysis and, you know, as an immigration judge has the presumption of regularity, of course, she does, you know, talk about the claim, she does, cite the exhibits. And, you know, the board, in affirming the immigration judge, sort of highlighted that. And so those decisions really work together. The board decision in affirming, you know, the immigration judge's decision does cite the pages 13 through 16. It talks about the UK border note more specifically, and of course, the State Department report more specifically, and indicates, of course, that there is no indication that Sikhs or individuals in Mr. Singh's position, you know, have or fear those incidents that they may have in the past because of these changed country conditions. So the court should look to both the immigration judge and also the board as the two decisions, you know, work together. And certainly the immigration judge looked at all the evidence, was aware of it, and took it into account. You know, and again, the petitioner presented himself as a regular party member, the agency considered his, you know, incidents of harm, and also the period of time in which he wasn't harmed, and considered all of that in addressing his claim and in considering the department's rebutted changed country conditions. And again, and I see my time is almost concluded. Certainly, I again, point this court to which is very similar on the facts, you have those same militant and terrorism claims. And, you know, in addition, the more recent unpublished Singh v. Barr case, which is also very similar with militants and claims, it's the same evidence there that DHS presented here. And in those two cases, the panels found that the department's rebuttal was supported by substantial evidence. If there are no further questions, I'll briefly just sum up to say that in addition to the rebuttal claim, no substantial evidence supports both also the agency's denial of petitioners conventions, torture claim, and also the humanitarian asylum claim. Thank you. Thank you. All right, Mr. Jove, we'll give you a minute for rebuttal. This case is not like Jagtar Singh. In Jagtar Singh, his first arrest was because he was caught carrying pro-Khalistan posters in a truck. In our case, Mr. Singh's first arrest was because he was caught sheltering Sikh terrorists in his home. In Jagtar Singh, his second arrest was he was returning from a political rally. In this case, Mr. Singh's second arrest was he was taken from his home and accused of involvement with Babar Khalsa, which had just murdered the chief minister of Punjab. It's simply not true that Mr. Singh characterized his case as simply an Akali Dahl case. When pressed about why he would be arrested, this is on page 133, he said, because of the wrong relations that I've had, I've been accused of having with the wrong relations I've been accused of having with militants. That's why they want to get me and kill me. That's his claim, but neither the IJ nor the judge addressed it. One final point. The record in Jagtar Singh did not include the NSAF report about the persecution of people who are suspected of being associated with Babar Khalsa. This record does. It is the most critical piece of evidence in the record, but neither the judge nor the board addressed it. All right, Mr. Jobe, thank you. Counsel, thank you both for your
judges: PAEZ, BADE, Collins